UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LEROY CAMPBELL, | : | Case No. 3:11-cv-84 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED;
AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the
administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and
therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security
Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 26) (ALJ's decision)).

**I.**

On August 15, 2006, Leroy Campbell filed an application for disability insurance
benefits. (Tr. 93-98). He filed an application for supplemental security income on
February 20, 2009. (Tr. 106-109). Plaintiff alleged that he became disabled on July 20,
2000. (Tr. 93). However, his onset date was made the last date he worked, June 19,
2006. (Tr. 12, 13, 121). He alleged disability due to back and leg pain and depression.
(Tr. 126).

Plaintiff's application was denied initially and upon reconsideration. (Tr. 63-67, 69-71). A hearing was held on June 24, 2009 before the ALJ. (Tr. 27). The ALJ issued his decision on August 28, 2009, finding that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 26). The ALJ determined that Plaintiff retained the ability to perform a range of light work that allowed him to perform a significant number of jobs in the economy. (Tr. 12-26). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-13). Plaintiff then commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff is 44 years old. (Tr. 93). He has a twelfth grade education. (Tr. 131). Plaintiff had been married since 1990 and lives with his wife and four children, as well as his father. (Tr. 33, 299). His past relevant work was as a security and alarm system installer, which consisted of heavy exertional work as Plaintiff performed it. (Tr. 55). Plaintiff alleges that he stopped working (installing and servicing security systems) because he was in constant pain. (Tr. 42).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 19, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post surgeries with residual pain and radiculopathy; major depressive disorder, single episode without psychotic features; and panic attacks with agoraphobia (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: simple repetitive tasks, no lifting from below waist level; the option to sit and stand at will; occasional climbing ramps and stairs; no climbing ladders, ropes or scaffolds; no crawling, crouching or stooping; occasional kneeling, balancing and bending; no exposure to a work environment of vibration or vibrating tools impacting on a claimant's work station; no use of foot pedals, leg controls or similar extremity controls; occasional to less superficial contact with coworkers, supervisors and the public; occasional work setting and routine changes; no fast pace, strict time standards or strict production quotas; and occasional overhead reaching.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on December 8, 1967. From the amended alleged disability onset date through the present claimant has been between and was 38 and 41 years old, which is defined as a younger individual (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2006, the amended alleged disability onset date of this decision (20 CFR 404.1520(g)).

(Tr. 14-25).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to disability insurance benefits. (Tr. 26).

On appeal, Plaintiff argues that: (1) the ALJ erred in rejecting the opinions of Plaintiff's treating physician and in relying, instead, on the opinion of the medical expert; (2) the ALJ erred in not finding Plaintiff disabled by his mental impairments; and (3) the ALJ erred in finding Plaintiff was not credible in his allegations of disabling pain. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

-4-

> "The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion. The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is
> supported by substantial evidence, a reviewing court must
> affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present

sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

Plaintiff claims that the ALJ erred in rejecting the opinion of Plaintiff's treating

physician, Dr. Kaiser, in relying instead on the opinion of state agency reviewer, Dr.

Villanueva. (Tr. 20-21).

The record reflects that:

On July 6, 2004, Plaintiff's treating surgeon, Dr. Thomas Goodall, reported that

Plaintiff had undergone a laminectomy for lumbar spine pain and lower extremity

parasthesia. (Tr. 183). Later that month, he underwent a "microscopic depression lumbar

laminectomy with discectomy foraminotomy,[1] and lysis of perdural adhesions[2] at the L5-S1 level on the right." (Tr. 181). He was doing well on his August 3, 2004 follow up, but had complaints of upper extremity parasthesia. (Tr. 180). By August 31, 2004, Plaintiff had complaints of both right lower extremity and left upper extremity parasthesia. (Tr. 179). On September 30, 2004, he had decreased left lower extremity parasthesia but an increase in spinal pain and decreased range of motion. (Tr. 178).

Dr. Goodall gave Plaintiff a return-to-work slip on November 18, 2004, at the Plaintiff's behest, even though he still had right leg pain. (Tr. 175). On December 23, 2004, Dr. Goodall reported that although Plaintiff was working, he still had complaints of right leg pain. Plaintiff had undergone an epidural block which had improved his pain level. (Tr. 174). Plaintiff underwent a MRI on February 8, 2005, which demonstrated degenerative disc disease at L5-S1. There was "abnormal enhancement around the right S1 root and the right lateral recess." (Tr. 184).

On July 31, 2006, Dr. Jamal Taha saw Plaintiff for his severe pain which he had had since his last back surgery. Dr. Taha diagnosed degeneration of the lumbar or lumbosacral intervertebral disc and postlaminectomy syndrome of the lumbar region. Dr. Taha stated that it was hard to determine if surgery would help, as the pain could be related to the bulging disc or to scar tissue or nerve damage. (Tr. 187).

---

[1] One of the oldest operations for cervical disc disease.

[2] The process of cutting scar tissue within the body to restore normal function and reduce pain.

Dr. Scott West, a neurosurgeon, reported that he had treated Plaintiff from September 8, 2000 through November 13, 2000 for a herniated lumbar disc at L5-S1 on the right. He had performed a laminectomy at L5-S1 on October 12, 2000. (Tr. 190). Plaintiff returned to work on November 20, 2000 without restrictions. (Tr. 193, 204-205).

The record was reviewed on October 16, 2006 by Dr. Esberdado Villanueva. (Tr. 216). He opined that Plaintiff could lift/carry up to twenty pounds occasionally and ten pounds frequently, stand/walk for six hours out of eight and sit for six hours out of eight. (Tr. 210). He could frequently climb ramps and stairs but never climb ladders, ropes, and scaffolds. (Tr. 211). This assessment was affirmed on April 9, 2007 by Dr. McCloud, another non-examining physician. (Tr. 250)

Dr. Lita Mathai, Plaintiff's pain specialist, treated him with epidural injections and pain medications prior to his onset date. (Tr. 255-262, 264-269). On May 11, 2005, Dr. Mathai stated that she did not think "there [was] really a surgical solution to his problem." (Tr. 266). On June 12, 2006, Plaintiff was seen for a significant amount of pain that was interfering with his ability to walk and work. Dr. Mathai noted:

> Dr. Goodall states that there is a lot of scar tissue there and apparently he did Duracare there and needs a repair with patch. So, Leroy really does not want to have another operation, but his option is really limited with multiple operations and scar tissue. The next thing they can do is probably fusion, but that also most of the time does not eliminate the pain that he has.

(Tr. 255).

Dr. George Kaiser, who treated Plaintiff for low back pain, submitted his office notes dated January 15, 2007 through September 16, 2008. (Tr. 274-87). Exams revealed problems with eliciting reflexes, decreased range of motion, tightness and tenderness of the back, back spasms, and problems walking. Plaintiff was treated with pain medications. (Tr. 274, 277, 279, 281, 284).

On June 5, 2008, Dr. Kaiser reported that Plaintiff had pain that kept him from working full time. He could frequently lift/carry up to five pounds and occasionally lift/carry up to ten pounds. He was never to climb, balance, stoop, kneel, crouch, or crawl. He could occasionally reach above shoulder level. He had a severe limitation in being around unprotected heights and a moderate limitation to exposure to marked temperature changes, being around moving vehicles, and driving automotive equipment. (Tr. 282-83). He could sit for between two and three hours and stand/walk for one hour, but he needed to alternate positions. (Tr. 287).

On January 16, 2007, Dr. Mathai reported that Plaintiff had tried to return to work and that his employer told him not to work and to go on long term disability. (Tr. 305). An August 22, 2008 MRI demonstrated "[p]ostoperative changes at L5-S1 on the right. There is evidence to suggest a localized disk protrusion into an area of scar causing retrodisplacement of the right S1 nerve root sleeve." (Tr. 303). A lumbar spine MRI with and without contrast showed "a small broad based posterior disk bulge at the L5-S1 level. This is causing some narrowing of the right lateral recess and question of possible L5 nerve root contact as well." (Tr. 299).

Plaintiff was seen in the ER on March 23, 2009 for complaints of right shoulder pain sustained in a fall. (Tr. 292-297). He had tenderness, swelling, and a reduced range of motion of his shoulder. The diagnosis was right shoulder separation. (Tr. 297).

Substantial evidence supports the ALJ's finding that Plaintiff could perform light work subject to the restrictions enumerated in his RFC finding. The limitation to light work included no lifting from below the waist; only occasional climbing of ramps and stairs, kneeling, balancing, and bending; and no climbing of ladders, ropes and scaffolds; no crawling; no crouching, and no stooping. The sit/stand option and limitation to work that does not involve the use of foot pedals or leg controls recognizes Plaintiff's complaints that his pain at times radiated through his legs and affected how long he could sit, stand, or walk. By further restricting Plaintiff to work that does not require exposure to vibrations or vibrating tools, the ALJ recognized that such vibrations could aggravate Plaintiff's pain symptoms. The ALJ further restricted Plaintiff from work requiring more than occasional overhead reaching in light of his shoulder problem, even though, as the ALJ noted, any shoulder impairment did not meet the 12-month durational requirement for disability. (Tr. 21 citing 20 C.F.R. § 404.1505).

The record makes clear that Plaintiff did not require any additional restrictions. Dr. Villanueva, who performed the RFC assessment for the state disability determination agency, determined that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, and could stand/walk and sit for six hours in an eight-hour day. (Tr. 210).

This is consistent with light work. *See* 20 C.F.R. § 404.1567(b). He further indicated that Plaintiff should never climb ladders, ropes, or scaffolds, but could perform all other postural activities frequently. (Tr. 211).

Plaintiff alleges that the ALJ failed to follow the treating physician rule and give his opinion controlling weight. However, the regulations make clear that an ALJ is not always required to give controlling weight to treating source opinions. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). State agency reviewing doctors' opinions "may be entitled to greater weight than the opinions of treating or examining sources" when more consistent with the record as a whole. SSR 96-6p, 1996 SSR LEXIS 3, at *7.[3] Plaintiff acknowledges this fact, but argues that the ALJ failed to meet his obligation of explaining his basis for not giving the treating opinion controlling weight. (Doc. 10 at 12). This Court disagrees. The ALJ did a through analysis of all of the evidence, finding that the objective medical evidence, such as the MRI studies, bone scan, and Dr. Taha's physical examination, makes it clear that affording Dr. Kaiser's opinion controlling weight would be improper.

---

[3]    Plaintiff maintains that the ALJ completely rejected Dr. Kaiser's opinion. However, the ALJ did not completely reject the opinion, and in fact cited to SSR 96-2p for the proposition that "[a] finding that a treating source's medical opinion is not entitled to controlling weight under the above criteria does not mean that the opinion is rejected." (Tr. 19). The ALJ never stated that he was rejecting Dr. Kaiser's opinion *in toto* - but rather that it did not merit controlling weight. (Tr. 19). In fact, the ALJ's decision incorporated some of Dr. Kaiser's limitations into his RFC finding. (*See, e.g.*, Tr. 18, 283, 287).

**B.**

Second, Plaintiff claims that the ALJ erred in not finding him disabled by his mental impairments.

The record reflects that:

Dr. Nicole Leisgang, a clinical psychologist, evaluated Plaintiff on March 3, 2007, at the request of the State agency. Plaintiff complained of feelings of depression and anxiety and experienced panic attacks. (Tr. 226). Plaintiff related that he spent most of his time at home and watched television, listened to music, and read. He maintained phone contact with a few friends. (Tr. 227). He was observed to be depressed, anxious and had a hand tremor. He related that he had anger issues, poor sleep, worried, and had reduced energy. He was unable to perform serial 7s[4] and his concentration and attention were restricted. Intelligence was thought to be in the low average to average range. (Tr. 228).

Dr. Leisgang diagnosed major depressive disorder, single episode without psychotic features, panic disorder with agoraphobia, and a GAF of 51.[5] (Tr. 229).

---

[4] "Serial 7s" is counting down from one hundred by seven, a clinical test used to test mental function. On its own, the ability to perform "serial 7s" is not diagnostic of any particular disorder or impairment, but is generally used as a quick and easy test of concentration and memory in a number of situations where clinicians suspect that these cognitive functions might be affected.

[5] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

His ability to relate to others was moderately to seriously limited. His ability to maintain

attention, concentration, persistence and pace was moderately limited. His ability to deal

with work stress was moderately limited and the stress could lead to increased panic

attacks, avoidant behavior, and increased depression. Dr. Leisgang stated:

> He very likely may have difficulty relating adequately to others
> in completing simple repetitive tasks … and [h]e would have no
> difficulty understanding simple instructions, but his short-term
> memory skills are limited and he may have difficulty retaining
> them. Further, his pace may be slowed by his depressive
> symptomatology.

(Tr. 230). Dr. Leisgang also reported that "[h]is attention and concentration skills were

not strong during this evaluation and may deteriorate over extended periods, slowing his

perform in completing simple, repetitive tasks." *Id.*

At the request of the state agency, the record was reviewed by psychologist Dr. Irma

Johnston on April 3, 2007. (Tr. 232). She opined that Plaintiff was moderately impaired

in his daily activities and social functioning. He had moderate problems in maintaining

concentration, persistence, or pace. (Tr. 242). He was moderately limited in his ability to

understand, remember, and carry out detailed job instructions; perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; work

in coordination with or proximity to others without being distracted by them; complete a

normal workday or workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods; interact appropriately with the general public; accept instructions and

-12-

respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (Tr. 246-247)

Based on the record, this Court concludes that the ALJ properly considered evidence of Plaintiff's mental impairments and sufficiently accounted for them in the RFC finding.[6] The ALJ found that Plaintiff had depression and panic attacks. (Tr. 14). He addressed those mental health concerns by limiting Plaintiff to simple repetitive tasks and work that involved no more than occasional contact with co-workers, supervisors, and the public; occasional work setting and routine changes; and no fast pace, strict time standards, or strict production quotas. (Tr. 18). These restrictions are consistent with the moderate limitations in activities of daily living; difficulties in maintaining social functioning; and difficulties maintaining concentration, persistence, or pace that the ALJ found.[7] (Tr. 17).

Plaintiff, nonetheless, insists that his mental impairments were disabling. (Doc. 10 at 16-17). In support of his argument, Plaintiff relies on the findings of Dr. Leisgang,

---

[6]     It is important to note that Plaintiff received no specialized mental health treatment. At the hearing, he told the ALJ that he was "just kind of depressed." (Tr. 38). He believed his depression was a side effect of medication. (Tr. 42). He made no reference to anxiety. On this record, it is clear that the ALJ accounted for any functional restrictions resulting from any mental impairment.

[7]     In her mental RFC assessment, Dr. Johnston concluded that Plaintiff retained the capacity to perform simple repetitive tasks in a low stress and "relatively static" work setting. (Tr. 248). She further advised that Plaintiff be limited to work that involved only minimal contact with supervisors and co-workers. (*Id.*) The mental component of the ALJ's RFC finding is consistent with Dr. Johnston's findings and recommendations.

-13-

who performed a consultative examination. (*Id.*) Plaintiff notes that Dr. Leisgang found that Plaintiff's ability to relate to others was moderately to severely restricted and accuses the ALJ of ignoring this finding. (*Id.* at 16). Plaintiff's claim lacks merit. Moreover, while Dr. Leisgang noted moderate to severe impairment in the ability to relate to others, the ALJ assigned Plaintiff a GAF score of 51, which indicated moderate, not severe, symptoms. (Tr. 21, 230). While Dr. Leisgang suggested Plaintiff's difficulties in relating to others ranged from moderate to severe, her narrative findings provided the ALJ sufficient reason to find moderate, rather than severe, difficulties.

Additionally, the ALJ accommodated Plaintiff's mental difficulties by restricting Plaintiff to simple repetitive tasks in a low stress and static work environment. (Tr. 18, 22). The ALJ further restricted Plaintiff to work that was not fast paced and had no strict time standards or production quotas. (Tr. 18, 22). These limitations addressed the deficiencies in memory, attention, and concentration that Plaintiff notes. In fact, Plaintiff admits that Dr. Leisgang did not find that these deficiencies prevented Plaintiff from performing simple repetitive tasks, only that they would slow him down. (Doc. 10 at 17 (citing Tr. 230)). The removal of time restrictions and production quotas addresses this concern.

## C.

Finally, Plaintiff claims that the ALJ erred in finding that Plaintiff was not credible in his allegations of disabling pain.

-14-

While reviewing the ALJ's decision, it is important to note that this Court must accord great deference to the ALJ's credibility determinations, as the ALJ had the opportunity to observe the claimant's demeanor during the hearing. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi); 416.929(c)(3)(i)-(vi).

Plaintiff alleges that his return to work activity after his first two surgeries supports a finding that he is credible and not a malingerer. While this Court acknowledges Plaintiff's intention to return to his past employment, it is clear from the facts that he was not physically capable to perform his past employment which consisted of heavy exertional work. The fact that Plaintiff could not return to his *former* employment does not indicate that he could not return to employment, and does not render him credible in stating that he was unable to perform employment at the "light" exertional level.

The ALJ found that Plaintiff overstated the severity of his symptoms and functional limitations. The ALJ supported his conclusion with citations to the objective medical record. (Tr. 24). For example, Dr. Taha observed that pain injections provided Plaintiff significant relief (Tr. 24), yet Plaintiff testified that the injections did not help.

-15-

(Tr. 41).  Additionally, Plaintiff testified that he needed to use a cane to ambulate, but no doctor prescribed one.  (Tr. 24).  The regulations permit an ALJ to consider the inconsistency between a claimant's complaints and the medical record when assessing credibility.  The ALJ also noted that Dr. Villanueva found Plaintiff's allegations only partially credible (Tr. 214), and a social worker in Dr. Kaiser's officer reported that Plaintiff tended to exaggerate his subjective complaints.  (Tr. 16, 318).

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Leroy Campbell was not entitled to disability insurance benefits, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date:  __11/16/11__

Timothy S. Black
United States District  Judge

-16-